UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

UNITED STATES OF AMERICA,  :  05 Cr. 376 (CSH)

                Plaintiff,  :  MEMORANDUM AND ORDER

-against-  :

CHRISTY LANDRY,  :

                Defendant.  :

------------------------------------------------------- X

HAIGHT, Senior United States District Judge:

Having considered the submissions of counsel at a hearing on November 8, 2005, for the following reasons, and in the interest of justice, the trial of this case is adjourned from November 28, 2005 to January 30, 2006.

The eight-count superseding indictment charges defendant Christy Landry with conspiring to commit wire fraud, in violation of 18 U.S.C. § 371, and substantive violations of the wire fraud statute, 18 U.S.C. § 1343. At ¶ 4 the indictment describes a complex scheme for defrauding investors by "inducing them to pay fees for allegedly low or no-risk investment vehicles that would purportedly yield high rates of return, very rapidly," the co-conspirators knowing "that the investment vehicles did not exist, and that the investors would never receive the promised high rates of return." The alleged scheme is sophisticated and the Government's proof, one may reasonably anticipate, will be somewhat complex, in respect of both of testimony and documents.

When the case was transferred to the calendar of the undersigned from that of District Judge Cote, a trial date for mid-October had been set by Judge Cote and agreed to by counsel for the

1

Government and the defendant. The Government had estimated at that time that it would complete its case in chief in two to three weeks. However, during a status conference I convened shortly before that trial date, the prosecutor advised that the Government had just learned of proceedings in Arizona involving an important Government witness that might generate information about the witness's psychological or mental condition at the relevant times and presently. It later developed that this witness is one Michael J. Donahoe, an attorney and member of the bar of the State of Arizona, residing in Scottsdale, Arizona, who the indictment refers to as "CC-1" (shorthand for "co-conspirator 1") and describes as furthering the conspiracy by "representing himself to be an escrow agent" for various companies described to the defrauded investors. Indictment, ¶ 2. Donahoe has pleaded guilty before another Judge of this Court, entered into a cooperation agreement with the Government, and, given his alleged central role in the conspiracy, will be a most important prosecution witness at the trial.

The Government, quite properly, gave defense counsel and the Court notice of the Arizona proceedings involving Donahoe as soon as the prosecutors learned of them. At the status conference before me it was not clear just what the Arizona proceedings involved. But everyone agreed that the relevant records and documents should be obtained from Arizona as quickly as possible and made available to the Court, defense counsel, and the Government. The possibility that quite clearly arose was that the Arizona documents might give rise to pre-trial *in limine* motions by one side or the other, depending upon what they showed.

In these circumstances, counsel for the Government and for defendant agreed, as did the Court, that the trial would have to be adjourned from its mid-October date, so that the Arizona documents could be obtained and examined by counsel, who could then make such motions as

2

seemed appropriate to them. The trial was adjourned to Monday, November 28, 2005. At that time, there was no reason to believe that the Government's case in chief would take longer than the original estimate.

As enclosures to a letter dated October 21, 2005, the office of the Disciplinary Clerk of the Supreme Court of Arizona sent to the prosecutors a 501-page file generated by Donahoe's petition to the Disciplinary Commission of the Arizona Supreme Court to be transferred to "disability inactive status." The Government promptly made the documents available to defense counsel and to the Court. Donahoe had been suspended from practice in April 2002 for non-payment of dues. His petition for transfer of status, dated September 3, 2002, asserted in ¶ 3 that "[b]ecause of mental infirmity, Petitioner is presently 'disabled' as that term is defined in Supreme Court Rule 59(b)(1)(B)." That rule provides in pertinent part that a lawyer shall be transferred to disability status "upon proof which shall include a relevant medical speciality evaluation that, as a result of mental or physical infirmity . . . the person lacks the capacity to discharge adequately his or her duty to clients, the bar, the courts or the public."

Under the state's procedures, petitions such as Donahoe's are responded to by counsel for the State Bar of Arizona. In this case, elaborate proceedings ensued. During their course, Donahoe was examined by three clinical psychologists, Dr. Leighton, Dr. Wolf, and Dr. Blackwood, each of whom subjected Donahoe to batteries of tests, wrote written reports, and testified before a Hearing Officer of the Arizona Supreme Court. While the psychologists' written and testimonial opinions differ in some respects, they appear to agree that Donahoe suffers from attention deficit disorder ("ADD") or attention deficit hyperactivity disorder ("ADHD") or both; the diagnoses are sometimes used interchangeably in the reports. After the hearing, the Disciplinary Commission of

Arizona Supreme Court voted 6-3 that Donahoe had met his burden under the Rule and qualified for disability status. The Arizona Supreme Court approved the recommendation of the Commission majority by order dated September 28, 2005.

On November 3, 2005, the Government submitted a 32-page letter motion *in limine* for an order (1) ruling that Donahoe is competent to testify at the trial, and (2) precluding defendant and her counsel at trial "from introducing evidence of, or conducting cross-examination about, Donahoe's psychological condition" as revealed by the Arizona documents. In the alternative, the Government contended that if the defendant is not thus precluded, the Government should be allowed to call a psychologist to explain to the jury the meaning and effect of the psychological examinations of Donahoe conducted in the course of the Arizona proceedings.

Defendant's time to respond to this motion has not yet elapsed, and I say nothing at present about how the Government's motion should be decided, except to note that the Arizona psychologists' reports contain various references to Donahoe's memory which will undoubtedly attract the attention of defense counsel.

I called counsel in for a conference on November 8 because, given these recent developments, the possibility arose – I put it no higher than that, because the question turns in part upon the eventual resolution of the Government's motion – that the Government's case in chief would consume longer than three weeks. And that poses a problem, because if the trial started on November 28, as scheduled, the fourth week of trial would be from December 19 to December 23, very close to the traditional holy days and holidays, and with no guarantee that the evidence would be completed and a verdict reached by that time. There is a real danger that the distractions for jurors inevitably resulting from the approach of this solemn and festive holiday season would prevent

4

them from paying careful attention to the evidence, the summations of counsel, and the Court's instructions, and then giving sufficiently careful deliberation to the eight counts of the indictment. The overarching concern was that starting the trial, as it was now shaping up, on November 28 would endanger the fairness of the proceeding, a risk shared by both the Government and the defendant.

I shared these concerns with counsel at the November 8 hearing. The Government's first response added to those concerns. The prosecutors advised that they had only recently been in contact with one of the allegedly defrauded investors, who lives in Guyana. Unknown to the Government until only a short time ago, this individual taped a number of conversations with defendant Landry which the Government wishes to play to the jury as part of its case. (The tapes, we are told, are in English). Assuming, as it is prudent to do for present purposes, that the Government will be able to identify these tapes and have them admitted into evidence, this is another factor which would extend the time necessary for the Government to complete its case in chief.

In all these circumstances, and for the reasons I express *supra* and stated during the November 8 hearing, I conclude that the integrity and fairness of the trial process would be unacceptably placed at risk by starting the trial on November 28. The case is accordingly adjourned to January 30, 2006. I select that date because counsel for defendant advised that he had other trial engagements in January. If counsel for defendant is of the view that January 30 is too close to his other engagements, the trial will begin on February 6, 2006. Counsel is requested to advise the Court and the Government on this point as quickly as possible.

The trial is adjourned to coordinate with defense counsel's other commitments because continuity of representation is important, and I desire that the defendant, as well as the Court,

continue to have the assistance of an energetic and able attorney. In any event, bringing in a new defense attorney could not materially advance the adjourned trial date, because that attorney would need time to master a complex case and prepare the defense.

One further question must be discussed. The adjournment which the Court now orders was requested by the Government at the November 8 hearing. Defense counsel, having taken his client's instructions, argued that the trial should go forward on November 28. While there is a certain irony in a defendant opposing an adjournment prompted in large measure by the Court's concern that the trial be fair for her, I must pay careful attention to the reasons stated by counsel for the objection.

It is not a Speedy Trial Act problem. The Government says that there is plenty of time left on the statutory clock or available to extend it to legitimize a January 30 or February 6, 2006 trial date. Defense counsel does not contend otherwise. Rather, counsel points out that Ms Landry, a Canadian citizen, remains in pre-trial detention and has not been able to post acceptable bail.[1] I am told that some weeks ago the Government made a plea offer to defendant that she rejected (as, of course, she had every right to do). Counsel argued at the hearing that if the trial was further postponed, and the defendant remained in detention, the defendant might be "coerced" into accepting the plea offer, which counsel submits is unfair prejudice.

While I am determined that defendants not be unfairly coerced in any way, I do not think this argument has substance. Before accepting a guilty plea, the Court "must determine that there is a factual basis for the plea." Rule 11(b)(3), Fed. R. Crim. P. That determination is accomplished by having the defendant tell the trial judge ("allocute," in the inflated language of the law), in her own

---

[1] At the November 8 hearing it became apparent that renewed efforts at an agreement on bail are being made, or that a bail application in that regard may be made to the Court, a subject about which I say nothing further at this time.

words and under oath, what she did and what she knew with respect to the conduct charged in the indictment. The judge cannot accept the plea unless he hears enough from the defendant's own lips to be satisfied that the Government could prove at trial every element of the offense. The implicit premise in counsel's argument is that, confronted with this delay in the trial, the defendant would falsely implicate herself in the charged conspiracy just to get it all over with. Even if the defendant were moved to behave in such a manner, which seems to me something of a stretch, I cannot accept that this is the sort of prejudice to the defendant that overcomes the obvious risks to a fair trial inherent in starting it on November 28. Defense counsel does not suggest that the adjournment would prejudice the defendant in any way with respect to the defense she will offer at trial. The reasons favoring this adjournment seem to me to be unanswerable.

The trial of this case is adjourned from November 28, 2005, to January 30, 2006 or February 6, 2006, depending upon the prior commitments of counsel for the defendant. In the circumstances of the case, I find that the ends of justice served by this adjournment outweigh the best interests of the public and the defendant in a trial beginning on the earlier date. Accordingly I prospectively exclude from Speedy Trial Act calculations the time from and including November 28, 2005 (to which time had previously been excluded) to and including January 30, 2006. *See* 18 U.S.C. § 3161(h)(8)(A).

It is SO ORDERED.

Dated: New York, New York
November 9, 2005

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

7